May it please this Court, Counsel, I'm Susan Wilhelms, and I'm here on behalf of the Office of the State Appellate Defender. I represent the Defendant Marquis Sutton. Health Court judges are required to ask all potential jurors whether they both understand and accept four fundamental principles of criminal law, commonly known as the Zare Principles. Here, Mr. Sutton had a jury where not a single juror was asked if they both accepted and understood even a single one of these four principles. Basically, for the first principle and the fourth principle, the jurors who are asked if they accepted the principles weren't also asked if they understood and vice versa. And for the second and third principles, the jurors were only asked if they understood, but they weren't asked if they would accept the principles. Ms. Wilhelm. Yes. Let's assume we agree with you on that. Okay. Okay. How is this plain error in this case? Your Honor, this is plain error under two – it's got to be plain error under two principles. First of all, the evidence is closely balanced. And I would argue here there's two ways that we can see the evidence is closely balanced. We can see the evidence is closely balanced when we compare the State's evidence to how it was modified and weakened under cross-examination. Basically, we're looking at the witnesses, how they contradicted each other, and we can weigh the State's evidence against Mr. Sutton's presumption of innocence. All the witnesses had flaws in their testimony. Rockette Benjamin made a very questionable identification of my client. Roberta Pemberton is a heroin addict with a motive to testify against the co-defendants. And she impeached the credibility of Ashley Kemmerer by stating Ashley wanted to buy drugs that night. Sutton made a statement that people shouldn't sell heroin, that it's not definitive proof of guilt, especially when slaughter is openly selling heroin. And there's no extrinsic evidence linking Sutton to this offense. The shoes with slaughter's blood were linked only to And also I believe that you can find this closely balanced evidence based on the fact that the dwelling place of Alfonso's slaughter, the hotel room, was really not a residence. And this goes to the closely balanced... The hotel room wasn't a residence? No, Your Honor, because a dwelling is a structure in which occupants actually reside or intend to reside. And we're looking at the purpose for which a And when we ask, how is this room used by Mr. Slaughter? It was a business. He came to Carbondale on business? Yes. Under arrangements to sell drugs? Can there be joint use? I'm sorry? Do you think there's joint use there? He slept there. He did sleep there, Your Honor. He resided there. He testified his sole purpose for being there, though, was to sell heroin. And although he slept there, his first priority was to sell drugs. Because he woke up to make a sale. Don't you think there could be joint use? There can be joint use, but I believe here that his Mr. Slaughter's primary use of this was as a room to sell heroin. Not a hotel room, not a place to reside and sleep, but a temporary business. A lot of people work out of their homes. Yes, but their homes, I think when you're looking at a case where there are dual purposes, it is what is the primary purpose. I may live in my home, I may run a business incidental. Here, his sole purpose for being here, for being in that room, was to sell heroin. To wake up, to continue to sell heroin, and to remain in that room selling heroin until he was done. And one of the examples that I came up with is you've got a law firm in an old house. It's an old house, so you have a kitchen, you have an office in the front parlor. It's clearly a business, though, and not a dwelling place. And just because I fall asleep and I nap on the couch, it doesn't make that my home. It makes it a business, because I do not reside there. And when you're looking, again, at the purpose, the primary purpose for this hotel room was for him to sell drugs. And for that reason, I believe that you can find the evidence closely balanced for the purposes of a Zara analysis under SETI. If this court does not reverse Mr. Sutton's convictions, it should vacate the extended term portions of his sentences, because the trial court improperly found his behavior was brutal and heinous at sentencing. And when it made that finding, it found it under the preponderance of the evidence standard. Under Apprendi, those facts that increase the sentence have to be proven to a jury beyond a reasonable doubt. And brutal and heinous behavior is one of those facts. And here, there's no separate jury finding, finding his conduct brutal and heinous. The judge made this finding alone at sentencing. Apprendi errors, again, this has to be prong error under the closely balanced test. Right. It can be harmless error as well, can't it? Yes. But when we're applying this test, we're only to look at the evidence that was actually presented to the jury at trial, and to determine objectively whether the jury would have made this finding. And here, the trial evidence just doesn't show that necessary level of deliberate, tortious injury. Mr. Slaughter did suffer injuries, and he did have ongoing pain. But not every offense is an extraordinary offense deserving of an extended sentence under brutal and heinous behavior. We're not looking at the level of injury here, but the way in which that injury is inflicted, the intention to inflict ongoing pain. Brutal behavior is grossly ruthless. Heinous behavior, hatefully or shockingly evil. And behavior can be brutal or heinous, but it also has to be indicative of wanton cruelty. Weren't the injuries here to his head? He was barely conscious, barely breathing. There was blood splatter on the television, and on a dresser, and on a wall. There is injury here, but again, Your Honor. And marks from a shoe on his face. There are marks. Don't you think that's brutal and heinous, such that a jury would make the same finding as the court? What's interesting about the shoe, Your Honor, is that the shoes recovered in this case were shoes. And that one pair of shoes recovered. Not all shoes were probably recovered in this case. That is true. But evidence here also pointed to Richard Nelson, Sutton's co-defendant, and he did not receive an extended term sentence. And again, we're looking at the evidence that was presented to the jury. This was a joint trial. The same evidence. Sutton was convicted also of aggravated battery. Yes. He did not get extended term. He was convicted. Sutton and Nelson did not get the extended term. I'm sorry. No. But those two were convicted of all three. Nix was convicted of home invasion and robbery. Yes. She stayed in the car. Right. But when we compare Mr. Nelson and Mr. Sutton, although the evidence against them was the same and they were sentenced by the same judge, the trial evidence did not support Mr. Nelson getting an extended term sentence. He got a regular 30-year sentence and a seven-year sentence. And so, Mr. – based on the trial evidence – Well, what do you believe is the basis of the difference? Honestly, Your Honor, when you look at the tape of sentencing, I think that really angered the court. But that is not a – What angered the court? The tape that was presented at sentencing of Mr. Sutton and his behavior in the jail. Oh. He had been charged with mob action. For his behavior, those charges were later dropped. Right. He was disrupted. He was disrupted. But those are not facts that were presented at trial and presented to the jury. Those are facts only at sentencing. It's a lower standard of evidence, the preponderance of the evidence standard. So you're basically saying those are inappropriate, Yes, because when applying this test, this harmless test, you have to focus on the evidence that was actually presented to the jury at trial. And that clearly was not. And in my remaining time, I did file a motion to file a supplemental brief, and this court took it under advisement. I would just ask that if this court does not grant relief on any of the other issues, that his 14-year sentence for – 14-year extended term sentence for Mr. Sutton for robbery be vacated. That is not within the class of the most serious offense. Mr. Sutton received two extended term sentences for the greater Class X offense of home invasion and the lesser offense, Class II offense of robbery. And under case law, he can only be – he can only receive an extended term sentence on the conviction within the most serious class. If we grant that motion of yours, that raises a new issue. Okay. Right? Yes. Right? And so the State would be allowed to have additional time to brief that. Yes, they would, Your Honor. My question is to you, and I think we need to ask the State whether you'd be willing to stand on your brief sentence so that no further oral argument would be necessary. Yes, I would, Your Honor. In fact, I would be willing to answer any questions now, although I understand that's fair to the State at this point. But I just want to make sure that if this Court grants that, that we know the State will be given a chance, but I think they would have the right also to request oral argument if they wanted it. They wouldn't be in our discretion agreement, we'll ask. So, but you would stand on the brief? Yes, I would. The supplemental brief? Yes. Okay. And would you need a reply brief for that as well? It is a very well-settled area, I do not think so, Your Honor. Okay. I'm just wondering. I would just ask that this Court recognize the Zaire violation and remand my client for a new trial. Thank you. Thank you, Counsel. Counsel. Please, the Court. Counsel. It's a treat for me today because Counsel today interviewed me more than a decade ago for my first internship as a young lawyer, so. Is Counsel right here? Yes, Your Honor. She doesn't look that old. No good deed goes unpunished. Okay, well, let's get right to that then, Mr. Robinson. You're not going to argue that there was no violation of 431B, are you? Your Honor. Under the Sutter case? No, I'll point out that this. Are you going to concede the violation under the Sutter case? I will concede that today for purposes of argument because, in fact, I will concede it either way because I don't think it matters at all. Okay, but at least the benefit of your almost former employer. Right. And in light of a Supreme Court case of sending, we should concede that. Correct. Okay. And so that's where we are on that, Your Honor. I would say that I was going to take this sort of in a reverse order, but to begin with, the State would not, we would waive an oral argument as to this supplemental issue in very reasonable, expeditious due course. Just one moment. Okay. Okay. We will grant the motion for the supplemental brief and grant, of course, the right to provide the supplemental brief. And for the record, both parties have waived oral argument on that. How many days? Further oral argument, 30 days for each. Okay. Well, she's a, have you already filed it? Have you filed it? Oh, you have. Okay. And counsel served me with a courtesy copy by e-mail yesterday. The only thing I would point out for the record is that the Section 5-A-2 of the Extended Terms Statute that she points out does have some exceptions, and I will be addressing those in response. How much time do you need to file a response? Fourteen days, Your Honor. Fourteen days it is. Thank you. In reverse order. One second. So will an order issue come before me? Yeah, we'll have objects. Okay. I'm sorry. That's okay. Thank you. And the reason I pointed out my relationship with counsel at the beginning was I think that she and I on this issue, things happen, I don't think this is going to be a problem. And as I said, I want to take things in reverse order very quickly because I think Justice Cates is exactly right on the harmless error. At the expense of sounding like a prosecutor's prosecutor, in this case, the defendant and his two compatriots broke into the hotel room of this individual victim, beat him nearly to death, stomping on his neck and face, as Your Honor points out, to the extent that there's blood splatter in the hotel room, and ultimately stole approximately $750. That's what the evidence shows. Ultimately, he ends up in the hospital for some extended period of time in St. Louis, and the evidence shows that he has some long-term effects of this incident. And if that's not brutal and heinous for purposes of harmless error under the extended term apprendi cases, I just don't know what is. What about this idea, though, that there was a good point raised on this tape? Would the tape that was shown sentencing to the trial judge have been admissible for a jury? No. I took counsel's point to be that the judge was sufficiently inflamed by the tape that the judge sentenced her client to an extended term but not the defendant's co-defendant. Right. That is the point. I mean, he didn't sentence the co-defendant who had the same evidence as to all defendants, the same trial. And so that says something. I mean, that speaks kind of loudly, or maybe not in your opinion. It doesn't in my opinion because I think what we're getting into now is, from my view, his co-defendant got a benefit by what frankly I believe to be an oversight by the prosecution that her client didn't get. We shouldn't ignore that because now you're getting into a place where you're comparing sentences between defendants. And I don't think that's a place where we want to be. No, I'm worried about the court not making a finding as to one co-defendant that there wasn't heinous behavior and as to the second one making perhaps that same finding but being a little pissed off about the tape. So we don't know that. We won't know that. And, you know, I think that this is a position that this panel in particular can appreciate because this is not a panel of what I would view to be shrinking violence. You've been here all day. This court has seen enough from Judge Schwartz to know that he is no shrinking violent. No, no, I'm well. And I'm here in front of Judge Schwartz's local trial, so I understand that. And I think, as I said, what happened here was... Well, we also know that Judge Schwartz might be a little upset about that tape. That's true, and that's my point about it. I'm not sure that anyone on this panel would have necessarily articulated their chagrin with the defendant in the same way that Judge Schwartz did, but I think the sentiment would have been the same. And that's just the way that Judge Schwartz articulated it. I may not have done it that way. He did it that way. It's not an error. This was a jury trial. Correct. Okay. I mean, the crime date's pretty clear as far as a factual basis for determination of brutal and heinous behavior that can enhance a sentence. I mean, Judge Schwartz, to your right, is not a shrinking violent. None of the three of us are. I've been accused of a lot of things, but never that. It wasn't presented to the driver of fact. How do you get around that? We're all experienced lawyers. We're all experienced judges. One can look at this and reasonably anticipate what would happen if it were to be submitted to a jury, but it wasn't submitted to a jury. So how do you get around that? Well, I don't think we get around it so much as we just accept what the Supreme Court says about a printing. There's no question here that that's an error. I'm not going to argue that it's not. It's an error, and that goes to Your Honor's point. The question now becomes was the implementation of the extended term sentence harmless error on these facts. As I said, this is why I launched with the facts of this case. I don't know. As I said, if this is not brutal and heinous, I'm just not sure what is. Did they use their Nikes rather than a tire iron? Yeah. But I don't believe that any reasonable trier of fact, any reasonable jury, would have viewed this case and said that this action in finding them guilty was not brutal and heinous. And if that sufficiently answers your question, I would like to work in reverse to issue two. Justice Goldenhurst was asking you about the holding of People v. Crespo, which says if there's no doubt that a jury presented with the facts would have found that the crime was committed in a brutal and heinous manner, it would be harmless error. Right. I think that's what he was asking you. Right. And that's my point. I believe through the prism of Crespo. I just don't know how you look at the facts of this case and what the state proved and not conclude that it's harmless error by that standard. Quickly, as to the idea of a dwelling place, Section 2-6 defines dwelling. And a dwelling is, except as provided in Subsection B, which I'll get to quickly. Dwelling means a building or portion thereof, a tent, a vehicle, or other enclosed space, which is used or intended to be used for human habitation, home, or residence. Counsel talked about residence. I believe what counsel's utilizing are the case law that talks about Subsection B. This is the except for. Subsection B talks about except for Section 19-3 of this code, dwelling means a house, apartment, or mobile home, trailer, or other living quarters in which, at the time of the alleged offense, the owners or occupants actually reside in that home. If you look at 19-3, that's residential burglary. They were not convicted of that. They were convicted under the home invasion statute, which uses the Subsection A definition of 2-6, which can include everything including a tent or a vehicle. Clearly, the intent here under 19-6, which is the home invasion statute, is that if someone is staying there, whether they're selling drugs or operating a law office or whatever, if they're staying overnight there, they've got a toothbrush. Maybe they've got their drugs they're selling as well. But the point is you can't break in there, commit this kind of crime, and have it not be considered a dwelling place. That's the whole point of the legislation. They may not have their toothbrush. Are there any other questions? I don't believe so. Thank you, Counsel. We'd ask that you adjourn. Counsel? Ms. Willingham, before you even get up here, come on. What do you think about his last argument, a tent, a vehicle? I think no matter what form the residence takes, again, we have to look at what is our intent. Is our intent to reside there? It doesn't have to be a residence anymore. He's arguing that you're ‑‑ I think he's saying that your argument, the residential argument that you made about dwelling place is not really the issue. The issue is not whether it was a dwelling place because they were charged with home invasion. What do you say to that? I'm caught a little flat-footed by that argument because it wasn't raised in his brief. So I'm not prepared for that. I would again argue, though, that we need to look at what use Slaughter intended to make of this hotel room, and he intended to use it solely as a business as long as he could until he was out of heroin and could go home. Well, my apologies. I did not realize that was not in the brief, and so ‑‑ I don't believe it was, Your Honor. Was it, Mr. Robinson? Your argument about 2-6A, was that in your brief? Your Honor, I spoke to counsel about our brief. Just yes or no, was it in your brief? It is, generally speaking. The specific citation to the statute is not. It's the definition of dwelling place, which is ‑‑ I'm just trying to figure out, out of fairness, whether we need to allow her the opportunity to respond to your argument. That's all I'm asking. My position is yes, it is, but I understand it was. Okay. If you wish to file a supplemental response to that argument, you may. Thank you, Your Honor. In the same 14 days? In the same 14 days. Okay. I apologize, Ms. Wilhelm. No. Okay. Thank you, Your Honor, for clarifying that. Again, my response on that is, Slaughter's use of that hotel room was as a business, not as a place that he intended to reside. He only intended to use that as a place to sell, and I would ask that this Court find, if you don't find that it is actually not ‑‑ if you don't find that it meets the level of reasonable doubt, I would ask that you find that that argument at least raises a question, making this issue a closely balanced question, which, again, goes back and supports my Zehr argument, because under Zehr, now that the State has conceded the Zehr violation, our only issue is whether the evidence is closely balanced. I would argue that the evidence is closely balanced on that issue. And to return very briefly to the brutal and heinous argument, I just have to say, again, if this injury is brutal and heinous, why not the same finding for Richard Nelson? The judge called my client a thug and a punk twice and then entered this sentence. He heard the same evidence against Mr. Nelson, and he did not sentence him to an extended term. Something tipped the judge over in this case, but I would argue that it could not have been the facts that were presented to the jury at the higher standard or beyond a reasonable doubt because that same finding did not carry on to Mr. Nelson. And I would ask that this Court vacate the brutal and heinous findings against my client. Thank you. We appreciate the briefs and arguments of counsel. We will take the case under advisement. There are no further oral arguments scheduled before the Court. We are adjourned.